UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| McGhee Charles, #60763-004, | ) C/A No.: 4:12-2542-RMG-TER |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| United States of America; | )REPORT AND RECOMMENDATION |
| Ms. M. L. Rivera; | ) |
| Mr. Bob Durant; | ) |
| Mr. H. Cooper; | ) |
| Mr. Q. Frazier; | ) |
| individually and in their official capacities, | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

  The Plaintiff, McGhee Charles, proceeding *pro se*, filed this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)[1] on September 6, 2012. Plaintiff is a federal prisoner housed in the United States Penitentiary (USP) Coleman, Florida. At the time of the allegations raised in the complaint, Plaintiff was housed at Federal Correctional Institution (FCI) Estill, located in Estill, South Carolina. Defendants filed a motion to dismiss or, in the alternative, motion for summary judgment on February 26, 2013. Because Plaintiff is proceeding *pro se*, he was advised on or about February 27, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants' motion could result in dismissal of

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

his complaint. Plaintiff filed a response on June 25, 2013. (Doc. # 72). Defendants filed a reply on July 2, 2013. (Doc. #73).

## I.  DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

As previously stated, the Defendant filed a motion to dismiss, or alternatively for summary judgment. As matters outside of the pleadings were submitted by the parties, the undersigned will treat this motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); <u>Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. <u>Shealy v. Winston</u>, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. <u>Barber v. Hosp. Corp. of Am.</u>, 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See <u>Celotex</u>, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." <u>Id.</u> at 322; see also <u>Cray Communications, Inc. v. Novatel Computer Systems, Inc.</u>, 33 F.3d 390 (4th Cir. 1994); <u>Orsi v. Kickwood</u>, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## B.  ARGUMENT OF PARTIES/ANALYSIS

Plaintiff asserts claims under Bivens and 28 U.S.C. §1346 (Federal Tort Claims Act). He alleges that he suffered a serious injury when he was attacked by another inmate with a garden rake during a disturbance at FCI Estill on May 26, 2011. In his complaint, Plaintiff contends that he was in the gym when the disturbance took place, that he was cornered and assaulted by an inmate with a garden rake breaking his arm which later required surgery. Plaintiff alleges that Defendants Frazier and Cooper were the recreation officers working that evening who failed to properly secure the rake, a Class B tool, leaving it unsecured and unaccounted for in violation of institution policy. (Complaint). He alleges Defendant Durant was the Captain at FCI Estill and had supervisory responsibilities over the storage areas where the rakers were kept, and that Defendant Rivera was the Warden and failed to enforce institution policy regarding the storage and use of rakes. Plaintiff alleges Defendants, therefore, were negligent and deliberately indifferent to his risk of harm, and requests monetary damages.

Defendants argue they are entitled to summary judgment against his Bivens claims because Plaintiff fails to show a constitutional violation and they are protected by qualified immunity, and there is a lack of jurisdiction over his FTCA claim.

In his response to the motion for summary judgment, Plaintiff attaches a copy of Institution Supplement Est. 5500.12E, Tool Control, dated July 20, 2011 (2011 Supplement).  Plaintiff asserts the 2011 Supplement required that the garden tools (including rakes) be stored in a "tool room or expanded metal cage behind a single lock."(Response, p. 3-4). Plaintiff argues that the Defendants admit that they violated policy by admitting that  the garden tools were being kept in the gymnasium "storage room." (Id.). Plaintiff also argues that the Defendants are not entitled to qualified immunity

4

because the tool control policy specifically described a course of action that they failed to follow, thus they were not performing discretionary functions. (Response, p. 7). Plaintiff also asserts that the court does not lack subject matter jurisdiction to entertain his FTCA claim.

By way of background, the Federal Bureau of Prisons (BOP) issues Program Statements establishing rules and guidelines for management of correctional institutions within the BOP. See, e.g., Exh. 6 to Defendants' Motion for Summary Judgment. (Doc. #41). The Program Statement directs the individual institutions to develop tool control procedures. Id. at section 200. FCI Estill developed its procedures regarding tool control through its Institutional Supplements. The parties dispute which Institutional Supplement was in effect at the time of the incident in question.

There is no dispute that Institutional Supplement 5500.12D was in place on July 20, 2009 (2009 Supplement). There is no dispute that the 2009 Supplement identified rakes as equipment and contained no specific procedure regarding storage of rakes. There is no dispute that rakes were kept in a storage room located in the gymnasium with other equipment, which was open when the recreation area was open. ( Exh. 2, ¶ 10; Exh. 3, ¶6; Exh. 4, ¶5; and Exh. 5, ¶ 5 to Defendants' Motion for Summary Judgment, doc. # 41).[2]

There is no dispute that subsequent to 2009, a change was made to the Institutional Supplement which defined rakes as Class "B" tools rather than equipment, and that Class "B" tools had to be kept in a tool room or expanded metal cage behind a single lock, as well as other restrictions relating to Class "B" tools.[3]

---

[2] This incident occurred during the period when the recreation room was open. Exh. #4, ¶ 6 and Exh. 5, ¶ 6 to Defendants' Motion for Summary Judgment. (Doc. #41).

[3] Institutional Supplements categorized tools as Class "AA," Class "A," and Class "B," Class "B" being the least restricted.

There is no dispute that an institution supplement was developed on July 20, 2011 (2011 Supplement) that defined rakes as Class "B" tools. That Supplement is identified as 5500.12E. There is no dispute that in the provision where it identifies the supplement it replaces it states, "Institution Supplement EST. 5500.12D, Chapter 2, dated July 20, 2010." (Emphasis added). (Doc. #72-2, p. 1). Also, in the provision titled "Summary of Changes" it indicates "None."

Upon direction of the court to produce the 2010 supplement, (doc. # 54), Defendants produced Institution Supplement Est 5500.12E, Chapter 2, dated July 20, 2010 (2010 Supplement). (Emphasis added). (Doc. # 57). It indicates that it rescinds Institutional Supplement EST 5500.12D, Chapter 2, dated July 20, 2009. Under the "Summary of Change," it identifies changes to some provisions but none addressing the provisions at issue here. The pertinent provisions addressing rakes in the 2010 Supplement are the same as those contained in the 2009 Supplement.

Plaintiff argues that the 2010 Supplement produced by Defendant is not authentic. Defendants submit the affidavit of Roy Lathrop, a Paralegal Specialist with the BOP. Lathrop avers that the 2010 Supplement was misfiled in the FCI Estill archives which resulted in both the 2010 and 2011 Supplements being labeled as 5500.12E where ordinarily the identification phrases are alphabetically sequential when new supplements are created. (i.e., D, then E, then F. . . . ). He avers that the 2010 Supplement is a true and correct copy.

Although clearly there was a filing error, Plaintiff fails to create a genuine issue of fact as to the authenticity of the 2010 Supplement produced by Defendants. Although awkward in the record, there is no genuine issue of material fact that the 2010 Supplement is what it says it is.

In their reply to Plaintiff's response in opposition to summary judgment, Defendants assert that Plaintiff's entire opposition is based on a meritless assertion that there remains a genuine issue

of material fact as to the authenticity of the July 20, 2010,[4] version of the FCI Estill Institution Supplement. Defendants assert that subsequent to the disturbance, a decision was made to no longer have equipment such as rakes, shovels, and garden tools located at the recreation area storage room but they are now stored in the institution Central Tool Room. See Declarations of Rivera, Frazier, Bondurant, and Cooper; Exh. 2, ¶ 11; Exh. 3, ¶ 7; Exh. 4, ¶ 7; and Exh. 5, ¶ 7. Defendants assert that the 2011 Supplement did not become effective until its date of distribution on July 20, 2011, and the incident complained of by the Plaintiff occurred on May 26, 2011, prior to the effective date of the 2011 Supplement upon which he relies. Thus, Defendants argue that because the Plaintiff relied upon a policy not in effect at the time of the incident in question, the remainder of his response in opposition is based upon legal arguments and conclusions that are meritless and non-responsive.

Defendants submit several declarations in support of their motion for summary judgement, Mildred Rivera ("Rivera")who avers that during the time period referenced in the complaint, she was employed by the Department of Justice, BOP, FCI Estill as the Warden. (Defs.' Exh. #2). On May 26, 2011, at approximately 8:00 p.m., a large scale disturbance between multiple African-American and Hispanic inmates erupted in the FCI Estill Recreation area. (Id.). Based on a subsequent investigation to the disturbance, in addition to garden equipment being used by inmates at the time, an unauthorized inmate was seen entering the recreation area storage room where he grabbed rakes, shovels, etc., and gave them to inmates involved in the disturbance who used the equipment to assault and injure other inmates. (Id.). As the Warden, Rivera had general oversight responsibility for the operation of FCI Estill but was not directly involved in every daily decision that impacted an

---

[4] As set forth above, the 2010 Supplement did not include rakes as Class "B" tools and contained no specific directives regarding storage of rakes.

inmate or his confinement at the institution. (Id.). Prior to May 26, 2011, Rivera had no knowledge that an inmate disturbance was going to occur in the FCI Estill recreation area or that inmates would use equipment located in the recreation storage area to assault and injure other inmates. (Id.). Prior to this particular incident, there had been no incidents at FCI Estill of any inmate using this type of equipment to assault other inmates or staff. (Id.). As the Warden, Rivera was familiar with the policies that governed the use and storage of tools, equipment, and materials and she did not perform any actions that would have constituted a violation of these policies, nor did she perform any actions of constitutional deliberate indifference toward the Plaintiff's safety and well-being. (Id.). Institution Supplements may be issued by Wardens to provide local instruction for implementing BOP directives , i.e., Program Statements. (Id.). During the time period set forth in the Complaint, Program Statement 5500.12, Correctional Services Procedures Manual, dated October 10, 2003, set forth the directives of the use and storage of tools, equipment, and materials located at BOP facilities. (Id.). In compliance with the requirement set forth by Program Statement 5500.12, FCI Estill promulgated Institution Supplement EST 5500.12D, Tool Control, dated July 20, 2009,[5] which defines three classes of tools and how each class is required to be stored, issued, used, and accounted for. (Id.). Institution Supplement EST 5500.12D also provides that: "Shovels, rakes, and other garden tools are considered equipment. This type of equipment may be shadowed green for accountability purposes. If the equipment is not shadowed green it must be accounted for using the bin card

---

[5] As set out above, Defendants subsequently submitted the Institution Supplement that was in effect at the time of the disturbance, Institution Supplement EST 5500.12E, dated July 20, 2010, Tool Control, which contains the same language as the 2009 Institution Supplement referred to in the declarations.

system." (Id.).[6] At the time, shovels, rakes, and other garden tools were classified lower than a tool and did not require any specific procedures for storage, issuance, or use. (Id.). The only specific requirement by the supplement related to accountability which provided that inmates were permitted access to the equipment, could use the equipment without any staff supervision, and were required to return the equipment after use so it could be accounted for by staff. (Id.). In the FCI Estill recreation area, equipment such as shovels, rakes, and other garden tools were kept in a storage room located in the gymnasium along with other types of recreation equipment. (Id.). The room was locked except during the hours the recreation area was open for operation. When the recreation area was open for operation, an inmate clerk was assigned to issue equipment for use by taking the inmate identification card from the requesting inmate and keeping it until the inmate returned the equipment to the storage room. (Id.). Prior to closing the recreation area for a meal or the end of the work day, a recreation staff member checked the storage room to ensure all equipment was returned and accounted for, and the storage room was secured. (Id.). Subsequent to the disturbance, Rivera asserts a decision was made by the entire FCI Estill Executive Staff to no longer have equipment such as rakes, shovels, and garden tools located at the recreation area storage room and the equipment is now stored in the Institution Central Tool Room, but inmates still have the ability to use the equipment without staff supervision. (Id.).

Defendants also submitted the declaration of Quincy Frazier who declared that during the time period referenced in the complaint, he was employed as a Recreation Specialist at FCI Estill. (Frazier declaration, Defs.' Exh. #5).  Contrary to Plaintiff's assertions, Frazier asserts that he had

---

[6] Institution Supplement EST 5500.12E, Tool Control, dated July 20, 2010, states the same. (See Defs.' Exh. 57-1, p. 10).

no knowledge or information prior to May 26, 2011, that an inmate disturbance was going to occur in the FCI Estill recreation area or that inmates were going to use equipment located in the recreation area to assault and injure other inmates. (Id.). Prior to this incident, there had been no incidents at FCI Estill of any inmate using this type of equipment to assault other inmates or staff. (Id.). On May 26, 2011, at approximately 8:00 p.m., a large scale disturbance between multiple African-American and Hispanic inmates erupted in the FCI Estill recreation area. (Id.). Prior to the disturbance, Frazier was in the leisure center preparing for the 8:00 p.m., inmate move when he noticed a large group of inmates gathering in the breezeway and then observed inmates fighting. (Id.). Frazier began securing the areas of the recreation yard in an attempt to contain the fighting and radioed the Control Center for assistance. After additional staff arrived at the scene, measures were taken to regain control of the situation and quell the disturbance. (Id.). Since the recreation area was in operation when the disturbance commenced the recreation equipment storage room was open and manned by an inmate clerk. (Id.). Frazier did not personally observe how any inmate got access to the equipment in the tool room; however, Frazier subsequently learned during an investigation conducted after the disturbance that an unauthorized inmate gained access to the storage room and began handing out equipment that was used by some of the inmates involved in the disturbance to assault other inmates. (Id.). The remainder of Frazier's declaration mirrors the declaration of Rivera with respect to the Institution Supplement and the decision of the FCI Estill Executive Staff to change the Institutional Supplement regarding garden tools. (Id.).

      Additionally, Defendants submitted the declarations of Gregory Bondurant (Captain), and Herbert Cooper (Warehouse Worker Foreman) which mirrors the declarations of Rivera and Frazier.

## C.  EIGHTH AMENDMENT[7]

To hold a prison official liable under the Eighth Amendment, the prison official must know of and disregard an excessive risk to inmate health or safety. The Supreme Court has defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less than purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825 (1994). "Actual knowledge or awareness on the part of the alleged inflicter thus becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir.1995).

As to Plaintiff's Eighth Amendment claim, Plaintiff fails to make a showing that any Defendant acted with deliberate indifference to his safety. Plaintiff has failed to make a showing that a Defendant wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm, that any official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference. Farmer, supra; Rich v. Bruce, 129 F.3d 336 (4th Cir. 1997)("A defendant is not subjectively reckless where, although he is aware of the existence of a general risk, he is unaware

---

[7] Plaintiff sues the individual defendants in their individual and official capacities. It is clear that Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Thus, It is recommended that Plaintiff's claims against the Defendants in their official capacities be dismissed for lack of subject matter jurisdiction under Rule 12(b) (1) of the Federal Rules of Civil Procedure.

that his conduct is inappropriate in light of that risk. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk.").

Additionally, Plaintiff has failed to show that Defendants violated policy. Based on the 2010 Supplement, the policy in effect on the date of the disturbance, "all institution tools will ordinarily be stored in the Central Tool Room, but some tools may be approved for storage in individual work areas." (Doc. # 57-1, p. 4, ¶ 4). Additionally, the Institution Supplement has a directive for "Storage in Work Areas" which states that "tools will be stored on shadow boards, or if not adaptable for a shadow board, kept in a locked drawer, cabinet, or shadowed on the floor. However, in all cases in which tools are to be shadowed, the shadow will be identical to the tool shape and size. . . . Class "B" tools will be shadowed in black." (Id., p. 5). Subsequently, there is a section on "Garden Tools" which states that "Shovels, rakes and other garden tools are considered equipment. This type of equipment may be shadowed green for accountability purposes, if the equipment is not shadowed green it must be accounted for using the bin card system." (Doc. # 57-1, p. 10). At the time, equipment, such as shovels, rakes, and other garden tools were classified lower than a "Class B" tool and did not require any specific procedures for storage, issue, or use but had procedures for accountability of them. Rakes were kept in the recreation area which was not locked at the time of the disturbance because the recreation area was open for operation at the time.

Based on the evidence before this court, there is not sufficient evidence to create a genuine issue of material fact that the Defendants were deliberately indifferent to Plaintiff's risk of harm or

by violating policy. Therefore, it is recommended that summary judgment be granted with respect to Plaintiff's Eighth Amendment Claim.[8]

## D. QUALIFIED IMMUNITY

Defendants argue they are entitled to qualified immunity on the Bivens claims. The doctrine of qualified immunity protects government officials from liability where the official's conduct does not violate a "clearly established" constitutional right. Evans v. Chalmers, 703 F.3d 636, 646 (4th Cir.2012) (*citing* Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity can shield BOP employees from suit. See Williams v. Ozmint, No. 11–6940, 2013 WL 1987231, at *3 (4th Cir. May 15, 2013). As discussed above, Plaintiff has failed to show that Defendants violated any clearly established right. Thus, Defendants are entitled to qualified immunity.

## E. FTCA CLAIMS

Plaintiff asserts a cause of action under the Federal Tort Claims Act (FTCA 28 U.S.C. 1346(b)) alleging the negligence of government employees caused him to suffer a serious personal injury.

In their motion and memorandum for summary judgment, Defendants concede that Plaintiff has met the exhaustion requirement for his FTCA claim. However, Defendants argue that this court lacks subject matter jurisdiction to entertain Plaintiff's FTCA claim. Defendants contend that the FTCA creates a limited waiver of the United States' sovereign immunity but the waiver is not

---

[8] Assuming Defendants' actions were indicative of negligence, a showing of mere negligence will not meet the deliberate indifference standard. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Neither the Fourteenth Amendment Due Process Clause, Davidson v. Cannon, 474 U.S. 344, 347 (1986), nor Eighth Amendment, Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) is violated by negligent failure to protect inmates from violence.

absolute and is subject to several exceptions including the exception for discretionary functions. Defendants argue that based upon the discretionary authority of FCI Estill at the time of the disturbance, equipment such as shovels, rakes and other garden tools were kept in a storage room located in the gymnasium along with other types of recreation equipment and the Defendants' discretion in achieving the goals of protecting inmates and staff based on the policies with regard to this issue at FCI Estill was related to the day-to-day inmate prison security. Therefore, Defendant argues that Plaintiff's claim under the FTCA should be dismissed.

Plaintiff argues in his response that the court does have subject matter jurisdiction because the 2011 Supplement specifically prescribed a course of action for the government officials to abide by so the conduct did not involve an element of judgment or choice.

The FTCA provides for a limited waiver of the Government's sovereign immunity from suit by allowing a plaintiff to recover damages in a civil action caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1). This waiver of immunity, however, is subject to exceptions, including the "discretionary function exception." See McMellon v. United States, 387 F.3d 329, 335 (4th Cir.2004) ( en banc ) (describing § 2680(a)'s exception as "the most important"). The discretionary function exception preserves sovereign immunity even if the Government was negligent, see Blakey v. U.S.S. Iowa, 991 F.2d 148, 152 (4th Cir.1993), and even if the government employee abused his or her discretion. 28 U.S.C. § 2680(a). Further, if the discretionary function exception applies, then the claim is outside the limited waiver of immunity created by the FTCA, and this Court is without

subject matter jurisdiction to adjudicate it. See Medina v. United States, 259 F.3d 220, 223–24 (4th Cir.2001).

The Supreme Court has articulated a two-part test in determining whether the discretionary function exception applies. See United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); Berkovitz v. United States, 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). First, "the exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment of choice.' " Gaubert, 499 U.S. at 322; Berkovitz, 486 U.S. at 536. If the action is not a matter of choice by the government employee, the discretionary function exception does not apply. Berkovitz, 486 U.S. at 536. The exception is not applicable "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Id. In the second prong, if the conduct does involve discretionary judgment, the court must decide "whether that judgment is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322–23.

Plaintiff relies on the applicability of the 2011 Supplement and its concomitant requirements regarding storage of rakes as Class "B" tools. As set forth above, the 2011 Supplement was not in effect at the time of the incident. It is not the court's function to make argument for the Plaintiff. Nonetheless, based on the record presented, the Defendants actions in developing institutional policy classifying rakes as equipment and their actions regarding the storage and use of rakes under the institutional policy in effect at the time of the incident at issue all involve the exercise of discretionary functions excepted from the waiver of sovereign immunity. Thus, the discretionary function exception applies and it is recommended that Plaintiff's FTCA claim be dismissed for lack of subject matter jurisdiction.

## II.  CONCLUSION

Based on the foregoing, it is RECOMMENDED that Defendants' motion for summary judgment (docket entry #41) be GRANTED and this case dismissed.

Respectfully submitted,

s/Thomas E. Rogers, III

Thomas E. Rogers, III
United States Magistrate Judge

July 18, 2013
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**